```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA
```

| | |
|---|---|
| AQUA-TERRA CONSTRUCTION AND<br>ENGINEERING SYSTEMS, INC.<br><br>VERSUS<br><br><br>OAK HARBOR INVESTMENT<br>PROPERTIES, L.L.C., ET AL | CIVIL ACTION<br><br>NO: 06-1864 c/w<br>06-8883<br><br>SECTION: "J" (1) |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter was tried before the Court, sitting without a jury, on August 20, 2007.[1] Having considered the testimony and evidence at trial, the arguments of counsel, and applicable law, the Court now issues the following Findings of Fact and Conclusions of Law in accordance with Federal Rule of Civil Procedure 52(a).

---

[1] This bench trial was originally conducted before Judge G. Thomas Porteous, who took the matter under submission.  The case was subsequently transferred to the undersigned.  The parties have agreed that the Court should decide the case based on the trial transcript, exhibits, and post-trial memoranda previously submitted.

**FINDINGS OF FACT**

1. Plaintiff Aqua Terra Construction and Engineering Systems, Inc. ("Aqua Terra") is a foreign corporation organized under the laws of the State of Florida, with a principal place of business in Gulfport, Mississippi, and authorized to do business as a marine contractor in the State of Louisiana. Dan Deslauriers ("Deslauriers") is the president of Aqua Terra.

2. At all material times, Oak Harbor Investment Properties, L.L.C. ("Oak Harbor"), a domestic limited liability company organized under the laws of the State of Louisiana, with its principal office and place of business in Baton Rouge, Louisiana, was the owner of Oak Harbor Marina (the "Marina"), located on Lake Pontchartrain near Slidell, Louisiana.

3. At all material times, Oak Harbor leased a portion of the Marina to Warren Properties, L.L.C. ("Warren Properties"), a foreign corporation organized under the laws of a foreign jurisdiction, with an office and principal place of business in Rancho Santa Fe, California, and authorized to do business in Louisiana. Warren Properties was responsible for all aspects of the Marina, including leasing boat slips and maintaining the docks. Mark White ("White") was employed by Warren Properties as its harbor master and was responsible for the overall operations of the Marina.

4.   As a result of Hurricane Katrina, approximately 60 vessels in the Marina sank and the Marina was filled with storm debris, leaving the docks, piers, and vessels in shambles.  At the time, the Marina had approximately 360 vessels moored to an extensive system of both floating and stationary docks.

5.   As the Marina operator, Warren Properties had an obligation to clean up the Marina after the storm to give its tenants access to their vessels.

6.   Harbor master White initially entered into an oral agreement with Deslauriers to have Aqua Terra provide salvage services.  On September 9, 2005, White and Deslauriers executed a signed notice to proceed.

7.   Shortly thereafter, Aqua Terra began vessel salvage operations, which required the breaking up and removal of damaged docks and piers.  From September 9, 2005 until late December 2005, when Warren Properties sent Aqua Terra a letter advising it to stop work, Aqua Terra continued to locate and inventory damaged and sunken vessels, and assisted the tenants when they came looking for their vessels.

8.   Under its initial agreement with Warren Properties, Aqua Terra provided its services to individual vessel owners and their insurers to salvage sunken vessels.  The Marina was not charged for this work.

9. Aqua Terra ultimately salvaged 30 to 40 vessels from the Marina and provided the other 300 plus tenants with access to their vessels to either move them or raise them if they had been sunk.

10. Due to the large volume of the debris, it was necessary to contain the debris to prevent it from dispersal into Lake Pontchartrain, and to prevent further damage to vessels as well as to facilitate access to them. Aqua Terra leased a containment boom to accomplish this.

11. Aqua Terra billed Warren Properties $1.00 per foot per day for the 2,000 feet of boom for 122 days, totaling $244,000. However, the Court finds that this amount is not reasonable in light of the customary practice in the environmental and cleanup industry that when the cost of leasing a boom approaches the price of purchase plus approximately 20%, the boom is offered to the client for purchase at that price plus a 20% surcharge. Benji Poiencot, an expert in the field of environmental cleanup, testified that the current market price of 2,000 feet of 18 inch top cable boom, which was available for purchase in September and October of 2005, was approximately $7.00 per foot, or $14,000. Adding a 20% surcharge, the total cost of the boom would be $16,800. The Court finds this amount is reasonable.

12. Aqua Terra also billed Warren Properties amounts that Aqua Terra were billed by its subcontractors plus 15% for administrative costs. The 15% administrative fee was to cover overhead, including the work of Deslauriers and a liability policy that Aqua Terra obtained for the job which had a premium of $80,000. Subcontractor fees, including the 15% administrative fee, included:

    a.    $174,184.02 in connection with equipment and personnel provided by Reliable Offshore Services Company ("ROSCO")

    b.    $17,028.91 for personnel provided by E&K Equipment

13. Aqua Terra also billed Warren Properties in the amount of $119,930.25 for:

    a.    $10,470 for services rendered by Jackie Clarke, who provided clerical support and administration

    b.    $22,809.40 for additional labor

    c.    $41,008.78 for additional equipment including the generator, work boat, and other equipment

    d.    $30,000 for use of property leased from Oak Harbor (the original charge of $40,000 reflected in the December 12, 2005 invoice

>   > was reduced by 25% due to the fact that Aqua Terra obtained some benefit of the property in connection with the salvage of the vessels)
>
>   e.   $15,643.07 reflecting a 15% administrative fee (the original $17,143.08 administrative fee reflected in the December 12, 2005 invoice was proportionately reduced due to the 25% reduction in the charge for use of leased property)

14.   The sum of the above charges, including the cost of the boom charged by Aqua Terra, totals $555,143.18.  Subtracting the amount of the boom which this Court finds to be unreasonable leaves a total of $327,943.18.  Because the work performed benefitted Warren Properties in some respects and Aqua Terra in others, the Court finds that it is proper to apportion 50% of this amount, or $163,971.59, to Aqua Terra.

15.   Aqua Terra also entered into a lease with Oak Harbor to lease vacant land adjacent to the Marina for use as a staging area for vessels after they were recovered from the Marina. Deslauriers and Patrick J. McElroy, the Oak Harbor representative responsible for the Marina, executed a Lease of Commercial Property, which was effective September 15, 2005 and was for an

initial term of three months at the rate of $10,000 per month. The initial lease term ended on December 15, 2005 and the lease was converted to a month-to-month lease.  Aqua Terra vacated the property in February 2006.

16.  This Court previously granted summary judgment in favor of Oak Harbor for the $17,500 balance due under the lease.

17.  Oak Harbor alleges that Aqua Terra failed to clean the leased site and left debris that Oak Harbor had to pay a third party to remove.  The Court finds that $500 will adequately compensate Oak Harbor for the cleanup work that it undertook.

18.  Oak Harbor is not entitled to recover attorneys' fees as prayed for in the consolidated claim under the lease.

## CONCLUSIONS OF LAW

1.  This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 and 18 U.S.C. § 1333.

2.  Venue is proper in the Eastern District of Louisiana, where a substantial part of the events giving rise to the claim occurred and a substantial part of the property that is the subject of the action is situated.

3.  No oral or written contract was formed between Aqua Terra and Warren Properties regarding an agreement for work to be done at the Marina for the benefit of the Marina and Warren Properties specifically.  However, Aqua Terra is entitled to recover on its claim on the basis of unjust enrichment.  See La. Civ. Code 2298.  There are five elements to unjust enrichment under Louisiana law: (1) an enrichment of the defendant, (2) an impoverishment of the plaintiff, (3) a connection between the enrichment and the impoverishment, (4) an absence of justification or cause for either the enrichment or the impoverishment, and (5) no other remedy available at law.  <u>Kane v. Motor Vessel Leda</u>, 355 F. Supp. 796 (E.D. La. 1972); see also <u>T.L. James & Co., Inc. v. Traylor Bros. Inc.</u>, 294 F.3d 743 (5th Cir. 2002).  Warren Properties benefitted from the services of Aqua Terra and, had it not been for Aqua Terra, Warren Properties would have had to pay another contractor to perform the work.  Furthermore, *quasi* contractual claims may be considered by the federal courts if they arise out of maritime contracts.  <u>Kane</u>, 355 F. Supp. 796.

4.  Aqua Terra is not entitled to recover its reasonable attorneys' fees based upon the open account statute, La. R.S. 9:2781.

New Orleans, Louisiana this 31st day of July, 2008.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE